IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

ARTHUR LEE WILLIAMS                    §

v.                                     §        CIVIL ACTION NO. 5:11cv68

PAUL I. THOMPSON, ET AL.               §

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT</u>

The Plaintiff Arthur Lee Williams, an inmate of the Texas Department of Criminal Justice,

Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C.

§1983 complaining of alleged violations of his constitutional rights.  This Court ordered that the

matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3)

and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United

States Magistrate Judges.  Williams named as defendants Officer Paul Thompson, Captain Frederick

Gooden, and Warden Jeffrey Calfee.

<u>The Claims of the Plaintiff</u>

Williams styled his complaint as a "42 U.S.C. §1985(3) conspiracy to deprive of civil rights.

He stated that on July 22, 2010, Officer Thompson intentionally pointed a red laser beam directly

into his eyes, damaging the "nerve muscles."  He described this laser beam as "the kind that fits on

the end of a gun target."

Williams stated that he filed a grievance about this, and after an investigation, all correctional

officers were ordered not to bring red laser beams to work.  After the grievance was filed, Thompson

began to harass and retaliate against him.  Williams explained that Thompson would conduct cell

searches and intentionally destroy Williams' commissary items, damage his personal property, and

1

drop his mail on the floor so that other inmates could see Williams' home address and the names of people writing to him.

On October 25, 2010, Sgt. Adcock was investigating a grievance which Williams had filed against Thompson. Adcock told Williams that "the officer has been warned to leave you alone." Williams went to breakfast at 3:15 a.m. and then came back to his cubicle and went to sleep.

Williams states that while he was asleep, Thompson came into his cubicle and hit him with a TDCJ flashlight so hard that the blow rendered him briefly unconscious. Williams yelled for Thompson to stop hitting him. The disruption woke up all of the other inmates in the housing area. After Thompson left, Williams got up and went to the central picket, where he told Officer Etters what had happened.

Etters called his supervisor, and Thompson walked away from his post and left the dorm. Sgt. Adcock and Sgt. Forester came into the dorm and Williams told them what had happened. Sgt. Adcock had him taken to the infirmary.

After shift change, Williams was taken to pre-hearing detention, where he received a disciplinary case for threatening to inflict harm on an officer. During the hearing on this charge, Thompson testified that Williams "would not stop filing grievances on him." Adcock testified that he had told Thompson to leave Williams alone but that Thompson had not done so. Despite this, Williams contends that Captain Gooden, the hearing officer, told him "this officer has hung himself, but I still find you guilty." He adds that Warden Calfee was aware of the problem but did nothing about Thompson's harassment or the guilty verdict rendered by Gooden.

The Defendants' Motion for Summary Judgment

The Defendants were ordered to answer the lawsuit and they have filed a motion for summary judgment. This motion asserts that Williams' excessive forec claims against Thompson lack merit because Williams suffered no injuries, Thompson did not retaliate against Williams by filing a disciplinary case, Williams was not denied due process in the disciplinary proceeding, Williams did

2

not set out a conspiracy claim, and the Defendants are entitled to qualified immunity.  Williams filed
a response to the motion, as well as his own motion for summary judgment.

The Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, Williams refers to a Supreme Court case called <u>Wilkins</u>
<u>v. Gaddy</u>, 130 S.Ct. 1175 (2010) and states that after he filed his first grievance, Thompson was
ordered to leave him alone, which angered the officer and led to the retaliation.  He stated that at the
disciplinary hearing, Captain Gooden "listened in disbelief" to Thompson's admitting to violations
of TDCJ policy and the Constitution, but still found him, Williams, guilty.  He states that Gooden
told him to take the tape of the hearing to the warden so that the charges could be dismissed because
"Thompson clearly hung himself and may lose his job."  Williams goes on to argue that Calfee and
Gooden are liable because they knew of the violations but did nothing, and that the <u>Wilkins</u> case
overturns the view that serious injuries are needed to maintain a cause of action for excessive force.

The Report of the Magistrate Judge

After review of the pleadings, the Magistrate Judge issued a Report recommending that the
Defendants' motion for summary judgment be granted in part and denied in part, and that Williams'
motion for summary judgment be denied.  The Magistrate Judge noted first that the Defendants'
motion made no mention of Williams' claims that Thompson retaliated against him through
intentionally destroying his property in cell searches, or of Williams' claim that Thompson testified
at the hearing that "the inmate would not stop filing grievances on me."

With regard to the use of force claims, the Magistrate Judge observed that the summary
judgment evidence showed that Williams suffered no injury as a result of the laser beam incident,
nor did he ever complain of any.  He did have an eye examination at one point, but this examination
was normal, showing no damage to his eyes.

Turning to the incident of October 26, the Magistrate Judge stated that the medical records
showed that Williams was seen in the clinic complaining of a "bump on his head," but the nurse

could find no sign of an injury.  Later examinations of Williams' head also did not show any signs of a "bump" or a "knot."

The Magistrate Judge noted that the Fifth Circuit has stated that where the objective factors of an inmate's medical record show no evidence of any injuries consistent with the inmate's allegations, the court may conclude that the allegations are implausible.  Wilburn v. Shane, 193 F.3d 517, 1999 WL 706141 (5th Cir., August 20, 1999), citing Wesson v. Oglesby, 910 F.2d 278, 281-82 (5th Cir. 1990).  In the present case, the Magistrate Judge noted that Williams alleged that he was hit in the head with a flashlight hard enough to render him unconscious, but two hours later, his head showed no signs of any injury, not even a bump or bruise.  These allegations are plainly implausible in light of the objective factors of Williams' medical record.

The Magistrate Judge went on to state that the Fifth Circuit has consistently held that civil rights plaintiffs must allege an actual injury caused by the defendants' actions.  This is true in cases alleging excessive use of force.  See, e.g., Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim for spraying with a fire hose frivolous where prisoner suffered no injury); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (sore, bruised ear which required no medical care and healed in a few days would not support civil rights claim for excessive force); accord, Knight v. Caldwell, 970 F.2d 522, 523 (5th Cir. 1992).  The Magistrate Judge stated that these holdings by the Fifth Circuit are "entirely consistent" with Wilkins, in which the Supreme Court specifically stated that "an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 130 S.Ct. at 1178; see also Memphis Community School District v. Stachura, 477 U.S. 299, 308 (1986) (for a §1983 claim to be viable, the plaintiff must allege an injury).

The Magistrate Judge emphasized that no case within the Fifth Circuit has upheld an excessive use of force claim in which the plaintiff suffered no injuries at all. Because Williams suffered no discernible injury, as in the hypothetical put forth in Wilkins, the Magistrate Judge recommended that his claims for excessive force be dismissed.

4

Turning to Williams' claim that he was denied due process in the disciplinary hearing, the Magistrate Judge stated that Williams had been charged with the offense of threatening to inflict harm on an officer.  At the hearing, Thompson testified that Williams had been filing "bogus grievances" on him and so he wanted to get a visual identification of Williams, although he specifically denied any retaliatory intent.  The officer explained that he awakened Williams during bed check because Williams was covered up and he, Thompson, wanted to make sure that there was a "live person" in the bed, but that when he woke him up, Williams said "I'm going to hurt you." Thompson denied hitting Williams with the flashlight and stated that he awakened the inmate by calling his name.

The Magistrate Judge set out the law concerning review of prison disciplinary matters and concluded that regardless of Thompson's reference to the grievances which Williams filed against him, the testimony that Williams had said "I'm going to hurt you" upon being awakened constituted "some evidence," which was sufficient to uphold the decision of the hearing officer.  Smith v. Rabelais, 659 F.2d 539, 545 (5th Cir. 1981); Hudson v. Johnson, 242 F.3d 534, 536-37 (5th Cir. 2001).

In addition, the Magistrate Judge stated that Williams failed to show that the disciplinary case resulted in the denial of any constitutionally protected liberty interests.  He received as punishment 15 days of recreation and commissary restrictions, 15 days of cell restrictions, and a reduction in classification status, but did not lose any good time.  These punishments do not implicate any protected liberty interests.  Pichardo v. Kinker, 73 F.3d 612, 613 (1996); see Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995).  The Magistrate Judge also rejected Williams' contention that his right to due process was violated by the fact that Captain Gooden allegedly failed to follow TDCJ rules and regulations, and that Gooden violated his rights by failing to investigate or otherwise report Thompson's statements at the hearing.

Although Williams argued that Warden Calfee was liable for failing to act on a grievance which he, Williams, had filed, the Magistrate Judge determined that inmates do not have a

constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so.  Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).  The Magistrate Judge also determined that Williams had not shown any basis for *respondeat superior* liability on the part of Warden Calfee.  *See* Thompkins v. Belt, 828 F.2d 298, 300-01 (5th Cir. 1987).

After determining that Williams' conspiracy claims lacked merit, the Magistrate Judge returned to Williams' retaliation claims.  The Defendants' motion for summary judgment argued that Thompson did not retaliate against Williams by writing the disciplinary case, asserting that Thompson did not know that Williams had filed a grievance when he wrote the case and because the act of writing the disciplinary case was *de minimis*.  The Magistrate Judge noted that Thompson's own affidavit did not allege that he was unaware of the grievance at the time that he wrote the case; on the contrary, the notes from the hearing show that Thompson alluded to Williams' grievances against him.  The Magistrate Judge stated that this assertion lacked merit.

The motion for summary judgment also argued that the act of writing the disciplinary case is *de minimis* because "the charging officer has nothing to do with whether Plaintiff is found guilty at his disciplinary hearing or the type of punishment Plaintiff receives."  The Magistrate Judge noted that under this reasoning, a charging officer could never be held liable for writing a disciplinary case with a retaliatory motive, but that such a conclusion was contrary to Fifth Circuit precedent.  In Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003), the Fifth Circuit allowed a retaliation case against a charging officer to proceed where the punishment imposed was 27 days of cell and commissary restrictions.  The Magistrate Judge thus concluded that summary judgment was inappropriate on Williams' claim of retaliation for the disciplinary case.  Finally, the Magistrate Judge determined that Gooden and Calfee were entitled to the defense of qualified immunity, but that Officer Thompson was not.

<u>Williams' Objections to the Report</u>

Both Williams and the Defendants filed objections to the Report of the Magistrate Judge. In his objections, Williams argues first that his case is "just like" <u>Hudson v. McMillian</u>, 503 U.S. 1 (1993), and his use of force claim is meritorious.  In <u>Hudson</u>, the evidence showed that the plaintiff suffered bruises, facial swelling, loosened teeth, and a cracked dental plate as a result of the force used upon him.  The Fifth Circuit had held that "significant injury" was a component of an excessive force claim, but the Supreme Court reversed, holding that "the absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  The Court explained that "this is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action" and that "the Eighth Amendment's prohibition of 'cruel and unusual punishments' necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" <u>Hudson</u>, 503 U.S. at 9-10.

As the Magistrate Judge concluded, no case in the Fifth Circuit has upheld a claim for excessive use of force where no discernible injuries were sustained.  Although Williams asserts that his case is "just like <u>Hudson</u>," the evidence in <u>Hudson</u> showed bruises, swelling, loosened teeth, and a cracked dental plate, whereas he, Williams, showed no evidence of any injuries at all.  He never complained of any injuries from being shot in the eye with a laser beam, and an eye examination showed no damage.  He complained of being rendered unconscious by a blow to the head from a flashlight, but two hours later, the medical staff found no bumps, bruises, or swelling on his head. The Supreme Court in <u>Wilkins</u> noted that an inmate "who complains of a push or shove with no discernible injury almost certainly fails to state a valid excessive force claim." Having no discernible injury, Williams has likewise failed to set out such a claim.  His objection on this point is without merit.

Concerning his due process claim, Williams contends that Thompson made "conflicting statements" and that the officer violated TDCJ regulations by his comments at the disciplinary hearing that Williams had been filing grievances on him.  He states that Adcock ordered Thompson

to stay away from him, but that Thompson refused to do so.  Williams argues that Gooden was authorized to dismiss the "wrongful charge" and told Williams and his counsel substitute that Thompson had "hung himself."  Williams points out that he and witnesses testified that there was never a threat, contrary to what the Magistrate Judge stated, and that he has a liberty interest in a fair hearing.

These contentions are without merit.  As the Magistrate Judge stated, there was "some evidence" to support the finding of guilt in the form of Thompson's testimony that Williams had said "I'm going to hurt you."  While Williams may have offered evidence that he did not make that statement, it was the province of the hearing officer to determine which evidence was more credible. Even if Gooden erred in determining that Thompson's testimony that Williams had made the statement was more credible than Williams' evidence that he had not done so, this does not by itself show a due process violation; the Constitution requires due process, not error-free decision-making. McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).  The federal district court cannot conduct a *de novo* factual review and assign evidence the credibility which Williams thinks appropriate. Smith, 659 F.2d at 545.  Williams' objection on this point is without merit.

Williams goes on to argue that Thompson made a threatening statement toward him and toward Warden Hudson, because both Williams and Hudson are black and Thompson is white.  He argues that this is proof of "racial motivation."  He also complains about another officer, Phyllis Adams, whom he claims shined a light in his eyes and hit him with a clipboard, but states that the disciplinary case which Adams wrote him was vacated by Warden Hudson.  Williams states that Thompson testified at the hearing that he, Williams, the only one whom Thompson checked to see if he was alive.

The Fifth Circuit has stated that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983).  The use of words, no matter how violent, does not comprise a §1983 violation.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir.

1973).  Williams' allegation that Thompson directed a threatening remark at him is not grounds for a constitutional claim.  The mere fact that Williams is black and Thompson is white, absent more, does not show a constitutional violation; otherwise, every encounter between guards and inmates of different ethnic backgrounds could give rise to a constitutional claim.  The Fifth Circuit has stated that civil rights claimants must state specific facts, not conclusory allegations.  Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986); see also Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996) (Section 1983 actions against individual governmental officials require "claims of specific conduct and action giving rise to a constitutional violation," not merely conclusory assertions).  Williams' assertions concerning a racial motivation by Thompson are entirely conclusory and show no basis for setting aside the Report of the Magistrate Judge.

Williams next contends that Warden Calfee had a "constitutional duty" to protect him and that Calfee knew or should have known of Williams' complaints because the grievances which Williams filed were signed off by Calfee and returned with no relief being accorded.  As the Magistrate Judge correctly concluded, the failure to investigate a grievance in a manner which a prisoner believes appropriate does not amount to a constitutional violation. See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); see also Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same).  This objection is without merit.

With regard to qualified immunity, Williams states that the Defendants "all knew, they all acted, and they indeed conspired to cover up for their wrongful actions."  Williams has not shown wrongful conduct on the part of Warden Calfee or Captain Gooden, nor that they acted in an objectively unreasonable manner which was contrary to clearly established law.  Williams' objections to the Report of the Magistrate Judge are without merit.

<u>The Defendants' Objections to the Magistrate Judge's Report</u>

In their objections, the Defendants state first that Williams has provided no evidence of retaliation.  They state that even if Thompson was aware that Williams had been filing grievances against him, this does not meet the elements of a retaliation claim because "merely having knowledge of the grievances filed is not enough to show intent to retaliate."  They state that the disciplinary case did not chill Williams' exercise of his First Amendment rights and contend that Williams cannot show that but for Thompson's retaliatory intent, he would not have received the disciplinary case at issue.  Finally, the Defendants state that if Williams wants to challenge the disciplinary case, he must do so through habeas corpus, not a civil rights lawsuit.

Williams stated that he received a disciplinary case from Thompson and that Thompson stated at the hearing that "the inmate would not stop filing grievances on me."  The hearing record shows that Thompson stated that Williams "had been filing bogus grievances on me and I wanted to get a visual on him and see who he was."  Several inmate statements, attached to the Defendants' motion for summary judgment, state that Thompson poked Williams with the flashlight and yelled at him about "grievances full of lies."

The elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred.  <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); *see also* <u>Jones v. Greninger</u>, 188 F.3d 322, 325-26  (5th Cir. 1999).  This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred.  <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995).

In this case, the summary judgment evidence, viewed in the light most favorable to the non-movant, Williams, shows that Thompson came to Williams' cell, confronted him about grievances

10

which he had filed, wrote him a disciplinary case, and then testified in the disciplinary hearing that Williams had been filing "bogus grievances" on him.  This evidence is enough to give rise to a "chronology of events from which retaliation may plausibly be inferred."

In <u>Hart v. Hairston</u>, 343 F.3d 762 (5th Cir. 2003), the plaintiff Robert Hart filed a grievance and complained to prison administrators about alleged misconduct by the defendant Kenneth Hairston.  A few days later, Hairston filed a disciplinary case against Hart charging him with "knowingly making false statements for the purpose of harming another person."  Hart was convicted of this charge, receiving punishment of 27 days of cell and commissary restrictions.  The Fifth Circuit held that this was sufficient evidence to survive summary judgment on the issue of retaliation and that the punishment inflicted was not *de minimis*.  The Defendants' contention that Williams has not met the elements of a retaliation claim is without merit.

The Defendants also contend that the punishment was not imposed by Thompson and that it did not prevent Williams from filing more grievances, and thus did not chill his exercise of First Amendment rights.  As the Magistrate Judge observed, the fact that the punishment was not imposed by Thompson is irrelevant; the punishment in <u>Hart</u> was not imposed by the defendant Hairston, yet the Fifth Circuit held that the inmate had made out a viable retaliation claim against Hairston.  The fact that Williams was not chilled in the exercise of his First Amendment rights is likewise irrelevant.  In <u>Hanna v. Maxwell</u>, 415 Fed.Appx. 533, 2011 WL 756202 (5th Cir., March 3, 2011), the Fifth Circuit stated as follows:

> The district court dismissed Hanna's retaliation claim on the ground that the disciplinary sanctions Hanna suffered were *de minimis*.  The court based its finding on the fact that Hanna refused medical care and filed grievances after his punishment.  Hanna was not required to allege that the retaliatory adverse act had stopped him from pursuing his constitutional rights, however.  The district court improperly applied a subjective standard in assessing the adversity of the retaliatory act.  *See* <u>Morris v. Powell</u>, 449 F.3d 682-684-86 (5th Cir. 2006) (the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights").  The sanctions of 10 days of confinement in isolation, and loss of 180 days of good time credit are more than *de minimis* adverse actions under this Circuit's case law.

11

Likewise, in the present case, Williams is not required to allege that the retaliatory adverse act had stopped him from pursuing his constitutional rights, and the Defendants seek to improperly apply a subjective standard in assessing the adversity of the alleged retaliatory act. As the Magistrate Judge concluded, the punishments imposed upon Williams are more than *de minimis* in light of the relevant Fifth Circuit precedent. This objection is without merit.

The Defendants next assert that Williams' retaliation claim concerning the disciplinary case is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) because a favorable ruling on the claim necessarily implies the invalidity of the disciplinary case, and Williams must show that the disciplinary conviction has been overturned, expunged, or otherwise invalidated. This is an incorrect statement of the law. The Fifth Circuit has specifically held that favorable termination of allegedly retaliatory disciplinary proceedings is not a requisite of a retaliation claim. <u>Woods v. Smith</u>, 69 F.3d 1161, 1164 (5th Cir. 1995); *see also* <u>Muse v. Sheriff's Dept., Ouachita Parish</u>, 405 Fed.Appx. 872, 2010 WL 5186759 (5th Cir., December 21, 2010) (inmate is not required to demonstrate a favorable outcome of a disciplinary case if he is alleging a retaliation claim); <u>Williams v. Hinyard</u>, 395 Fed.Appx. 124, 2010 WL 3680828 (5th Cir., September 14, 2010) (same). The Defendants' objection on this point is without merit.

With regard to Williams' claim that Thompson retaliated against him by destroying his personal property, a claim to which the Defendants did not allude in their motion for summary judgment, the Defendants state in their objection that Williams offered no evidence that any of his personal property was destroyed, and that he did not prove retaliatory intent. In his original complaint, Williams stated that he did "hereby declare under the penalty of perjury the foregoing facts are true and correct to the best of my knowledge." He stated that he filed a grievance against Thompson over the laser beam, and that after the grievance was investigated, Thompson "started to harass and retaliated against me for filing the grievance against him." He explained that Thompson would do cell searches and "intentionally destroy plaintiff's commissary items (food purchases and personal items). Officer Thompson would deliberately throw my personal property and damage it."

12

The Fifth Circuit has stated that sworn pleadings are considered competent summary judgment evidence. <u>Al-Ra'id v. Ingle</u>, 69 F.3d 28, 32 (5th Cir. 1995). In stating that Williams has offered "no evidence" of retaliation, the Defendants overlook this sworn pleading. In addition, the Defendants' request for summary judgment relies in large measure on Thompson's denials of retaliatory intent, which are not sufficient to show entitlement to summary judgment in light of the Plaintiff's contrary pleadings. This objection is without merit.

The Defendants go on to assert that Williams cannot bring a property claim under 42 U.S.C. §1983 because he has adequate post-deprivation remedies in state court or through the administrative procedures of TDCJ. While this is correct, it is irrelevant because Williams is not bringing a property claim, but a retaliation claim. This objection is without merit.

Finally, the Defendants argue that Williams did not overcome Thompson's entitlement to qualified immunity with regard to the disciplinary case, claiming that it was reasonable for Thompson to write Williams a disciplinary case for threatening to inflict harm on him. However, this is a disputed issue of fact; as the Magistrate Judge noted, Thompson offered evidence at the disciplinary hearing that Williams had threatened him, and Williams offered evidence that he did not. Thompson also referred at the hearing to the grievances which Williams had filed against him, and there were statements in the record to the effect that Thompson had confronted Williams about his grievances at the time of the incident giving rise to the disciplinary case. The Fifth Circuit has explained that summary judgment on the issue of qualified immunity must be denied if a dispute exists as to the underlying historical facts, and that a determination as to objective reasonableness must be based on a version of the facts most favorable to the plaintiff. <u>Lampkin v. City of Nacogdoches</u>, 7 F.3d 430, 434-35 (5th Cir. 1993). The Defendants' objection on this point is without merit.

The Court has conducted a careful *de novo* review of the pleadings in this case, the motions for summary judgment filed by the parties and all of the competent summary judgment evidence in the record, the Report of the Magistrate Judge, the parties' objections thereto, and all other pleadings,

13

documents, and records in the case.   Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Plaintiff and the Defendants are without merit.  It is accordingly

ORDERED that the parties' objections are overruled and the Report of the Magistrate Judge (docket no. 39) is ADOPTED as the opinion of the District Court.  It is further

ORDERED that the Defendants' motion for summary judgment (docket no. 26) and supplemental motion for summary judgment (docket no. 31) are hereby DENIED without prejudice as to the Plaintiff's claims of retaliation by the Defendant Paul Thompson.  It is further

ORDERED that these motions are hereby GRANTED in all other respects, including but not limited to the Plaintiff's claims of excessive force by Thompson and all claims against Defendants Warden Calfee and Captain Gooden.   This dismissal also includes the Plaintiff's claims of conspiracy and discrimination, leaving only the retaliation claims against Gooden.  It is further

ORDERED that Warden Calfee and Captain Gooden are hereby DISMISSED as parties to this lawsuit.  Finally, it is

ORDERED that the Plaintiff's motion for summary judgment (docket no. 35) be and hereby is DENIED.

**SIGNED this 27th day of February, 2012.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

14